Larry EDWARDS, Individually and on Behalf of Others Similarly Situated, Appellant,

v.

ALASKA PULP CORPORATION, and Alaska Pulp Company, Ltd., Appellees.

No. S–6990.

Supreme Court of Alaska.

June 28, 1996.

---

James W. McGowan, Sitka, and Peter R. Ehrhardt, Robinson, Beiswenger & Ehrhardt, Soldotna, for Appellant.

Denton J. Pearson, Pearson & Hanson, Sitka, and Richard A. Kramer, Steefel, Levitt & Weiss, San Francisco, California, for Appellee Alaska Pulp Corporation.

James F. Clark, Robertson, Monagle & Eastaugh, Juneau, for Appellee Alaska Pulp Company, Ltd.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I.  INTRODUCTION

This appeal is brought by plaintiffs who settled a class action suit for private nuisance against a Sitka pulp mill. Plaintiffs sought $1 million in attorney's fees under the common fund doctrine. The trial court declined to apply the common fund doctrine, apparently concerned that it conflicts with Alaska Civil Rule 82. Applying Rule 82, the court awarded only $500,000 to plaintiffs' counsel, and plaintiffs appeal that award. We reverse the judgment of the superior court and remand the case for determination of a reasonable attorney's fee award under the common fund doctrine.

### II.  FACTS AND PROCEEDINGS

In February 1992, Larry Edwards, representing a class of shoreline property owners, sued the Alaska Pulp Corporation (APC) and its parent company for nuisance. Edwards complained about discharges into air and water from the defendants' Sitka pulp mill.

The plaintiff class was represented by an attorney from Sitka, as well as law firms from Soldotna; Burlington, Vermont; and Washington, D.C. The plaintiffs retained their counsel under a 33⅓% contingency fee arrangement.

The parties litigated the case vigorously for several years before it settled. The parties contested a number of pretrial matters, including the addition of APC's parent corporation as a defendant, class certification and an unsuccessful motion for decertification, a successful motion for change of venue from Juneau to Sitka, an initially unsuccessful motion for change of venue out of Sitka, and a change of venue from Sitka to Juneau based on responses to the jury questionnaire in Sitka. The parties engaged in pretrial discovery involving over 100,000 pages of documents, eighty depositions, and several disputes over the adequacy and confidentiality of responses. The defendants made several motions for summary judgment, all of which were denied completely or in part. The plaintiffs successfully challenged the constitutionality of a new statute that would have retroactively barred the suit.

APC closed its pulp mill on September 30, 1993. In September 1994, before trial began in Juneau, the parties reached a settlement agreement. The agreement required APC to establish a Sitka Alaska Permanent Charitable Trust (the Trust) to support educational and charitable activities in Sitka. APC was to provide $3 million to fund the Trust, making an initial payment of $2 million followed by five annual installments of $200,000. The agreement stated that "[i]n no event shall any member of the class be entitled to receive any payment from the Settlement."

The settlement agreement allowed the plaintiffs' counsel to apply to the court for attorney's fees and costs "in accordance with Alaska Rules [sic] of Civil Procedure 23," and provided that any fees and costs awarded to plaintiffs' counsel would be paid out of the Trust, to a maximum of $270,000 in costs and $1 million in fees. The agreement further limited funding for attorney's fees and costs to no more than half of the initial endowment and subsequent net income of the Trust.

Following the settlement, the plaintiffs' attorneys applied to the superior court for $1 million of fees under the common fund doctrine. In response, the defendants urged that under Alaska Civil Rule 82, counsel for the plaintiffs should receive either nothing, because they were not the prevailing party,

or $84,500.[1]

Counsel for the plaintiffs calculated the value of their legal work at over $1.7 million; plaintiffs' counsel also incurred $285,000 in costs. By comparison, the defendants incurred legal fees of $3.4 million, in addition to $1.07 million in costs. The superior court found that both the hourly rate and the time spent on the case by plaintiffs' counsel were reasonable, in light of the complexity of the case and the quality of their work. The court noted that "[t]he number of lawyers plaintiffs used" limited costs, as did "[t]he plaintiffs['] refusal to depose numerous witnesses." The court implicitly held that Rule 82 and not the common fund doctrine applied to the award of attorney's fees in the case:

> The court finds that a federal court applying the common fund benefit doctrine or the lodestar method and Federal Rule of Civil Procedure 23(b), might well award attorney's fees to Counsel in at least the amount Counsel are requesting. It would be inequitable not to award attorney's fees, where a Trust Fund is generated for the benefit of an identifiable community.

> However, the common fund benefit doctrine is more liberal in granting prevailing party status than Alaska Civil Rule 82. *Hickel v. Southeast Conference*, 868 P.2d [919] at 925 [(Alaska 1994)] ("Unlike Alaska's approach, the federal approach is extremely generous in granting prevailing party status.").

Finding that the plaintiffs were the prevailing parties and that under Rule 82(b)(3) the length and complexity of the litigation justified a departure from the scheduled amount of $84,500, the court relied upon Rule 82 in awarding $500,000 in attorney's fees, as well as $270,000 in costs, to the plaintiffs' counsel.

Counsel for the plaintiffs appeal the fee award. They claim that Rule 23, not Rule 82, governs attorney's fees in this case and that the superior court should have applied the common fund doctrine to provide full reasonable attorney's fees. Under the common fund doctrine, they claim, the court should have employed the lodestar method of calculating fees, which entitles them to $1 million, the amount of the settlement cap on attorney's fees.

### III. *DISCUSSION*

#### A. *The Common Fund Doctrine Applies in Alaska.*

The first question before us is whether the common fund doctrine is part of Alaska law.[2] That doctrine holds that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).[3] The United States Supreme Court established the doctrine in the 1880s. *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885).[4]

One rationale underlying the doctrine is the prevention of unjust enrichment. As explained by the United States Supreme Court, "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478, 100 S.Ct. at 749. One court has described such liti-

---

1. The Rule 82(b)(1) schedule sets the amount of reimbursable fees in this case at $84,500, based on the $3 million amount of the settlement and the fact that the case was contested but not tried.

2. We review such legal questions *de novo*. *Moore v. State Dep't of Transp.*, 875 P.2d 765, 768 (Alaska 1994).

3. The doctrine is sometimes stated slightly more broadly to include costs other than attorney's fees. *See City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 48 Cal.Rptr.2d 42, 906 P.2d 1196, 1199 (1995) (defining the doctrine as "the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees"). *Accord Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993).

4. The doctrine was further developed in *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Some jurisdictions call the doctrine the "equitable fund" doctrine, or the "fund-in-court" doctrine. *Fickinger v. C.I. Planning Corp.*, 646 F.Supp. 622, 632 (E.D.Pa.1986).

gants as "free riders." *La Raza Unida v. Volpe*, 57 F.R.D. 94, 97 (N.D.Cal.1972). Another rationale which supports the doctrine is quantum meruit. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 768 F.Supp. 912, 924 & n. 43 (D.P.R.1991), *vacated on other grounds*, 982 F.2d 603 (1st Cir.1992); Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985). The common fund doctrine is implicated any time one litigant's success releases well-defined benefits for a limited and identifiable group of others. Its source is the broad power of a court of equity. *Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).

We applied the restitutionary principle of the common fund doctrine when we required an insurer to bear a proportionate share of the attorney's fees for recovery of a workers' compensation disbursement. *Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525, 527 (Alaska 1976). Furthermore, we recently stated that the common fund doctrine applies in Alaska when we remanded a case with the instruction that the superior court "could choose to apply the common fund doctrine." *In re Estate of Brandon*, 902 P.2d 1299, 1319 n. 23 (Alaska 1995).[5]

■ APC's principal argument against applying the common fund doctrine in Alaska is that the doctrine conflicts with Rule 82. Consideration of this contention requires a comparison of Rule 82 and alternative doctrines governing attorney's fees.

Under the "American rule," each party pays its attorney's fees, regardless of who prevails. *See Alyeska Pipeline*, 421 U.S. at 247–60, 95 S.Ct. at 1616–23. Exceptions to the American rule include the award of fees to public interest plaintiffs and to successful civil rights litigants. *See, e.g., Singh v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1193, 1197 (Alaska 1993); *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977). Because the common fund doctrine allows court-ordered payment of attorney's fees, it is often described as an exception to the American rule. *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th Cir.1978) ("The common fund doctrine may be the earliest exception to the 'American' rule that losers in litigation are not liable for winners' attorney fees.").

■ The common fund doctrine differs from exceptions to the American rule in that the doctrine is a mechanism for *fee-spreading*, not *fee-shifting;* the common fund doctrine requires reimbursement of fees "by the *prevailing* party, not the losing party." *Bowles*, 847 P.2d at 449. Since each party still pays its own attorney's fees, the common fund doctrine is entirely consistent with the American rule. *Boeing*, 444 U.S. at 481, 100 S.Ct. at 750–51.

Alaska is the only state that does not follow the American rule. Alaska Judicial Council, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases* 1 (1995). The purpose of this state's fee-shifting provision, Civil Rule 82, is "to partially compensate a prevailing party for the expenses incurred in winning his case." *Tobeluk v. Lind*, 589 P.2d 873, 876 (Alaska 1979).

APC's claim that Rule 82 preempts the common fund doctrine misunderstands the separate purposes served by the two rules. While the common fund doctrine is a fee-spreading mechanism which prevents unjust enrichment of those who derive benefit from the efforts of others, Rule 82 is a fee-shifting tool which provides partial reimbursement of a prevailing party's legal fees.

■ Rule 82 was not intended to cap recovery of attorney's fees under other doctrines. Despite the existence of Rule 82, Alaska has set attorney's fee awards under other exceptions to the American rule. *Singh*, 860 P.2d at 1197 (applying 42 U.S.C. § 1988, and determining attorney's fees under its guidelines rather than those of Rule 82); *Hayer v. National Bank of Alaska*, 663 P.2d 547, 549–50 (Alaska 1983) (applying Truth-in-Lending Act, and determining at-

---

**5.** Although the doctrine initially developed in federal courts, nothing limits it to federal law. Most states apply the doctrine. *See, e.g., Sweet*, 48 Cal.Rptr.2d 42, 906 P.2d at 1199; *Montalvo v. Chang*, 64 Haw. 345, 641 P.2d 1321, 1327 (1982); *Oklahoma Tax Comm'n v. Ricks*, 885 P.2d 1336, 1339 (Okla.1994); *Bowles v. Washington Dep't of Retirement Sys.*, 121 Wash.2d 52, 847 P.2d 440, 449–50 (1993).

torney's fees under its guidelines). Thus, Rule 82 does not preempt the applicability of the common fund doctrine, wholly or in part.[6]

### B. *The Common Fund Doctrine Applies in this Case.*

■ The parties dispute whether the settlement reached for the community in this case qualifies as a "common fund." We conclude, as a matter of law, that the common fund doctrine is applicable to the case at hand.[7]

The primary reasons for applying the common fund doctrine to this case are to prevent unjust enrichment and provide reasonable compensation to class counsel. In this case, the plaintiffs' lawyers created a fund that would not otherwise exist. The fund contains a specified amount, and it benefits a limited community.[8] The benefit to the community is measurable when expenditures from the Trust are made for community activities. Thus the doctrine allows fees to be spread among those benefited by the suit in proportion to the benefits they received. *See* John P. Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 Harv.L.Rev. 849, 916–22 (1975). Without application of the doctrine in this case, the fund's beneficiaries would receive a clear benefit from the efforts of the plaintiffs' attorneys whose work created the fund, while those attorneys would not be sufficiently compensated. We conclude that the facts in this case give rise to the unjust enrichment or free rider concerns that the common fund doctrine is intended to address, and that application of the doctrine to this case is appropriate.[9]

### C. *Determination of a Reasonable Fee under the Common Fund Doctrine.*

■ Although courts may differ and the federal circuits are divided over how best to determine the amount of attorney's fees under the common fund doctrine, all agree that a "reasonable" attorney's fee is the proper standard.

Calculation of a reasonable fee under the common fund doctrine is an issue of first impression in Alaska. While we have considered various approaches to determining a proper fee award, these have arisen in the context of statutory schemes such as 42 U.S.C. § 1988.[10]

**6.** Although this case involves a settlement, in a case resolved by trial, a successful litigant could recover a fund from which fees would be paid under the common fund doctrine and still apply after trial for an attorney's fee award under Rule 82 from the non-prevailing party. In such a case, Rule 82 would appropriately allow partial reimbursement for charges against the fund.

**7.** Because this appeal involves an application for attorney's fees from a fixed settlement fund, the parties may no longer be adversaries with respect to the issues in this case. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir.1992); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374 (N.D.Cal.1989). Courts should therefore closely scrutinize applications for attorney's fees from a fixed fund. *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 195–96 (3d Cir.1988); *Rothfarb v. Hambrecht*, 649 F.Supp. 183, 237 (N.D.Cal.1986).

**8.** The number of beneficiaries here is comparable to or smaller than that of beneficiaries in other common fund cases, such as derivative securities or toxic tort litigation. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226 (2d Cir.1987).

**9.** Not every case in which a party or a party's counsel produces a benefit for others implicates the common fund doctrine. To determine whether the doctrine is applicable to a fact pattern, the Ninth Circuit employs a set of criteria that the U.S. Supreme Court applied in *Boeing* and *Alyeska Pipeline*. According to these criteria, "[t]he common fund doctrine is properly applied ... if '(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefitting.'" *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir.1989) (quoting *In re Hill*, 775 F.2d 1037, 1041 (9th Cir.1985)). *See also Boeing*, 444 U.S. at 478–79, 100 S.Ct. at 749–50; *Alyeska Pipeline*, 421 U.S. at 264 n. 39, 95 S.Ct. at 1625 n. 39; *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1123 (9th Cir.1981); *Stevens v. Municipal Court*, 603 F.2d 111, 112 (9th Cir.1979). The doctrine is inapplicable where the benefit gained by each beneficiary may not easily be ascertained, as where "sophisticated economic analysis would be required" to determine exactly how much each beneficiary gained from the litigation. *Alyeska Pipeline*, 421 U.S. at 264 n. 39, 95 S.Ct. at 1625 n. 39. We find that this case meets the *Alyeska Pipeline* criteria.

**10.** *See, e.g., Singh*, 860 P.2d at 1199; *Hayer*, 663 P.2d at 550.

Courts have adopted three distinct approaches to arriving at the calculation of a reasonable fee. The first, adopted in early Supreme Court common fund cases, is to award attorneys a percentage of the fund. *Pettus,* 113 U.S. at 128, 5 S.Ct. at 393. Because the percentage approach sometimes resulted in huge fee awards and apparent windfalls to attorneys who had little risk or work involved, two alternatives gained popularity in the 1970s.

Under the "lodestar" approach, the court determines the number of hours an attorney reasonably spent on the case and multiplies that number by a reasonable hourly rate to determine an initial attorney's fee figure, which can then be adjusted for circumstances. *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166–68 (3d Cir.1973), *aff'd in part and vacated in part,* 540 F.2d 102, 112–18 (3d Cir.1976).

Under a third approach, the Fifth Circuit identified twelve factors for courts to consider and weigh. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). The Ninth Circuit subsequently adopted this method. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The twelve factors, commonly known as the *Johnson–Kerr* factors, are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

From these three alternative approaches federal courts have developed a number of hybrid or "blended" approaches. The prevalent blended approach is the modified lodestar or lodestar/multiplier. *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1294–95 & n. 2 (9th Cir.1994). Under this approach, the trial court determines the lodestar amount based on a reasonable hourly rate and the number of hours. The court then has discretion to determine a multiplier which is applied to the lodestar amount to establish the final attorney's fee figure. Factors to be considered in determining whether to use a multiplier include the *Johnson–Kerr* factors, the risk to counsel in taking the case, achievement of extraordinary results, the quality of representation, and substantial delay in payment. *Id.* at 1301–05.[11]

The federal circuits differ over this issue. The First, Sixth, Seventh and Ninth Circuits accept either the percentage or modified lodestar approach and leave the choice to trial judges' sound discretion. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 306–07 (1st Cir.1995). The Third and Tenth Circuits also accept either method, but express a preference for the percentage approach. *In re General Motors,* 55 F.3d at 821; *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir.1994).[12] A majority of the circuits which have recently addressed this issue have held that "the choice between lodestar or percentage calculation depends on the circum-

11. The court in *Washington Public Power* declined to extend to common fund cases the rationale of *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which prohibited the use of risk multipliers in statutory fee cases. *Id.* at 1299. *But see In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 822 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995).

12. The Fifth Circuit requires the lodestar method, while the D.C. and Eleventh Circuits require the percentage method. *In re Thirteen Appeals,* 56 F.3d at 306. Law in the Second Circuit is ambiguous. In 1987 the Second Circuit chose the lodestar method. *"Agent Orange",* 818 F.2d at 232. More recently, however, the Southern District of New York has allowed both, *see, e.g., Dubin v. E.F. Hutton Group, Inc.,* 878 F.Supp. 616, 621 & n. 5 (S.D.N.Y.1995), and found the percentage method to be "preferable." *Bragger v. Trinity Capital Enter. Corp.,* No. 92 Civ. 2124, 1993 WL 287626 at *4 (S.D.N.Y. July 23, 1993), *appeal dismissed,* 30 F.3d 14 (2d Cir.1994).

stances," *Washington Pub. Power,* 19 F.3d at 1296 (quotations omitted), and that "the approach of choice is to accord the district court discretion to use whichever method ... best fits the individual case." *In re Thirteen Appeals,* 56 F.3d at 308.

In *Washington Public Power,* the Ninth Circuit upheld a trial court's decision to award $32 million in attorney's fees under a modified lodestar analysis to lawyers who recovered $687 million in settlements. 19 F.3d at 1294–95. The trial court chose a lodestar approach, primarily because of " 'the immense size of the settlement fund,' " which "magnified beyond all reasonable limits the margin of error inherent in a percentage fee award." *Washington Pub. Power,* 19 F.3d at 1297 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 779 F.Supp. 1063, 1085 (D.Ariz.1990)). The Ninth Circuit held that the trial court acted within its discretion:

> [I]n common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other. As always, when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds should be *'reasonable under the circumstances.'*

*Id.* at 1296 (quoting *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990)) (emphasis added in later opinion).

We agree with the logic that the Ninth Circuit followed in *Washington Public Power.* Situations may exist where application of the lodestar or the percentage method will render an unfair result. For example, in a case in which an attorney recovers a small fund, application of the lodestar might cause attorney's fees to devour most or all of the fund, while in a case in which an attorney quickly negotiates an enormous settlement, the percentage method might cause an inordinate windfall.[13] Giving trial courts the flexibility to decide between percentage and lodestar allows the fairest determination of reasonable attorney's fees in each situation. We therefore hold that a trial court applying the common fund doctrine has the discretion to determine whether to apply the percentage of the fund method or the modified lodestar method in order to calculate attorney's fees.

Trial courts that choose to apply the percentage of the fund method frequently adopt 25% as a baseline percentage and then modify it according to circumstances.[14] We think this is a sound approach for trial judges who choose to use the percentage approach. One frequently-mentioned consideration is that the percentage may decrease as the size of the fund increases. In addition to the size of the fund, other considerations that may affect the percentage include the *Johnson–Kerr* factors, the time required to reach a settlement, whether class members have substantial objections to the settlement terms or the fee request, non-monetary benefits conferred by the settlement, the economies of scale involved in a class action, and the structure of the settlement. *Camden I,* 946 F.2d at 775; *Mashburn,* 684 F.Supp. at 692–93.[15]

---

**13.** *See Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993) ("The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.").

**14.** While acceptable percentage awards have ranged from under 10% to 50%, the consensus seems to be that 20% to 30% (or 19% to 33%) is normally reasonable. *See* Monique Lapointe, *Attorney's Fees in Common Fund Actions,* 59 Fordham L.Rev. 843, 867–68 & n. 169 (1991); Christopher P. Lu, *Procedural Solutions to the Attorney's Fee Problem in Complex Litigation,* 26 U.Rich.L.Rev. 41, 47–48 & n. 37 (1991). The median and the most common figure seems to be 25% of the fund. *In re Pacific Enters. Sec.*

*Litig.,* 47 F.3d 373, 379 (9th Cir.1995); *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir.1991); *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679, 692 (M.D.Ala. 1988); *but see Activision,* 723 F.Supp. at 1375 ("almost always hovers around 30%").

**15.** Trial courts which elect to follow a percentage approach must exercise their independent discretion in arriving at a fair and reasonable fee award under the common fund doctrine. The percentage figures in lawyers' contingent fee agreements with the class representatives "are not controlling on the court's determination of fees for the class recovery." Alba Conte, *Attorney Fee Awards* 61 (2d ed. 1993). However, at least one appellate court thought the contingency fee level worth consideration. *Continental Illi-*

Mindful that a trial court is acting as a court of equity in common fund cases, in determining a reasonable fee the court should exercise its discretion to avoid unjust enrichment of either counsel or beneficiaries. As Justice Frankfurter wrote about determining attorney's fees from a common fund, "[a]s in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility." *Sprague,* 307 U.S. at 167, 59 S.Ct. at 780. The trial court should explain the reasons behind its decision. The advantages and disadvantages of each approach, as noted here and in cases from other jurisdictions, should provide sufficient guidance for the exercise of discretion.

On remand, the superior court could apply either a lodestar analysis or a percentage of the fund analysis, whichever it deems more appropriate.

## IV. *CONCLUSION*

The superior court found that Civil Rule 82 and not the common fund doctrine governed attorney's fees in this case. We hold that it erred. Therefore we REVERSE the judgment of the superior court and REMAND for determination of attorney's fees under the common fund doctrine.

RABINOWITZ, J., not participating.

*nois,* 962 F.2d at 572–73 ("[I]t might be quicker and easier to generate [evidence about fee arrangements in comparable litigation] than it would be to hassle over every item or category of hours and expense...."). We believe that in determining what percentage to apply, trial courts may consider, but should not be bound by, the percentage in a contingency fee arrangement.