*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF PUBLIC ASSISTANCE, | ) ) ) ) | Supreme Court No. S-15339 |
| | ) | Superior Court No. 3AN-12-09838 CI |
| Petitioner, | ) ) | O P I N I O N |
| v. | ) ) | No. 7001 – April 24, 2015 |
| LESTER GROSS, | ) ) ) | |
| Respondent. | ) ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Kathryn R. Vogel, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Petitioner. Mark Regan, Disability Law Center of Alaska, Anchorage, for Respondent.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

An applicant for federal disability benefits applied for state benefits that are intended to provide basic assistance while the federal application is pending. The

Division of Public Assistance — the division of the Alaska Department of Health and Social Services that administers the state program[1] — denied these interim benefits, relying on a subset of the criteria that the Social Security Administration uses to determine eligibility for federal benefits. The superior court reversed this decision, holding that Alaska law required the Department to apply the same federal substantive criteria and procedural requirements to its determination of eligibility for state interim benefits. The Department petitioned for review, and we granted the petition.

We conclude that, while state law does not require the Department to track the federal analysis exactly when it assesses eligibility for state interim benefits, the Department's application of the law erroneously excludes a category of applicants who will be found to be disabled for purposes of federal benefits and who therefore should be entitled to interim assistance. We therefore affirm the superior court's decision in part, reverse it in part, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Certain persons who are disabled and unable to work are entitled to federal Supplemental Security Income (SSI) benefits administered by the United States Social Security Administration.[2] In determining whether an applicant is "disabled" and therefore entitled to SSI benefits, the Social Security Administration uses a five-step

---

[1] *See* 7 Alaska Administrative Code (AAC) 40.040 (2015) ("Assistance under this chapter will be granted only upon application to the division."); 7 AAC 40.900(4) (2015) ("In this chapter, . . . 'division' means the division of public assistance of the Department of Health and Social Services.").

[2] *See* 42 U.S.C. § 1381 (2012); 20 C.F.R. § 416.110 (2014).

process outlined in federal regulations.[3] Steps one and two are satisfied if the Administration finds first that the applicant is not currently engaged in "substantial gainful activity"[4] and second that the applicant has a "determinable physical or mental impairment" lasting at least one year or likely to result in death, significantly limiting the applicant's "physical or mental ability to do basic work activities."[5] If these first two steps are satisfied, an individual may qualify for SSI benefits at step three, where the Administration considers whether the medical severity of the applicant's impairment "meets or equals" a disability listed in federal regulations.[6]

Individuals who satisfy the first two steps but do not qualify for SSI benefits at step three may nonetheless qualify through steps four and five. At step four, the Social Security Administration considers whether the applicant, despite his or her impairment, can perform work he or she has done in the past; if so, the applicant is not disabled and not entitled to SSI benefits.[7] If the applicant cannot perform past work, however, the analysis proceeds to step five.

At step five the Social Security Administration considers the applicant's ability to do *other* work in the national economy;[8] if the applicant can perform other work, he or she is not disabled and not entitled to SSI benefits. The burden shifts at this

---

[3]    *See* 20 C.F.R. § 416.920(a)(4) (describing five-step process in general); FRANK BLOCH, BLOCH ON SOCIAL SECURITY § 3:7 (2015 ed.).

[4]    20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(b).

[5]    *Id.* §§ 416.920(c), 416.909.

[6]    *Id.* § 416.920(d). The qualifying impairments are listed at *id.* § 404, subpart P, appendix 1. *Id.* § 416.920(a)(4)(iii).

[7]    *Id.* §§ 416.920(f), 416.920(h), 416.960(b).

[8]    *Id*. §§ 416.920(g), 416.920(h), 416.960(c).

step of the federal analysis, and the Administration, rather than the applicant, is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the applicant] can do, given [the applicant's] residual functional capacity and vocational factors."[9] Burden-shifting requires that the Administration present the testimony of a vocational expert when other methods of proof are insufficient.[10] If the Administration fails to carry its burden, the applicant is considered disabled and entitled to SSI benefits.[11]

Determining eligibility for SSI can be a time-consuming process, lasting many months. To help alleviate hardship during the long application period, state interim assistance programs pay "assistance financed from State or local funds . . . furnished for meeting basic needs" of SSI applicants while their eligibility for federal benefits is being determined.[12] The federal government reimburses Alaska for the interim assistance payments the State makes to individuals who are ultimately found to be entitled to SSI,[13] but the State is responsible for determining the parameters of its interim assistance program, including the requirements for eligibility.[14]

---

[9] *Id.* § 416.960(c)(2).

[10] *Id.* § 416.966(e); *see also* BLOCH, *supra* note 3, § 3:36.

[11] *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Erickson v. Shalala*, 9 F.3d 813, 816-17 (9th Cir. 1993).

[12] 42 U.S.C. § 1383(g)(3) (2012).

[13] *See id.* §§ 1383(g)(3)-(4); 20 C.F.R. § 416.1901(a).

[14] *See, e.g.*, *Kraft v. Comm'r of Pub. Welfare*, 496 N.E.2d 1379, 1383-86 (Mass. 1986) (discussing the relationship of federal and state law in interim assistance and stating that the federal statute and regulations "evince an intent to delegate to the States the power to determine the amount of such assistance and eligibility guidelines . . .
(continued...)

Alaska's interim assistance program is governed by AS 47.25.455, which provides: "The department shall pay at least $280 a month to a person eligible for assistance under this chapter while the eligibility of the person for benefits under [the SSI Program] is being determined."[15] A regulation, 7 AAC 40.180, provides that the Department will determine whether an applicant is eligible for interim assistance based on "whether the applicant is likely to be found disabled by the Social Security Administration, including whether the applicant's impairment meets . . . [the] Social Security Administration disability criteria for the listings of impairments described in 20 C.F.R. 404, subpart P, appendix 1."[16] The regulation further specifies that, "[i]n determining whether an applicant's disability meets [these] criteria," the Department will consider, among other things, whether the "impairment affects the applicant's activities of daily living" and whether "the applicant can perform any other work, including sedentary work."[17]

---

[14](...continued)
[and] authorize the States to determine the appropriate methodology for calculating the amount of reimbursement due.").

[15]    AS 47.25.455(a).

[16]    7 AAC 40.180(b)(1)(B) (2015). The regulation also requires the Department to examine "the SSI program's presumptive disability criteria under 20 C.F.R. 416.934," 7 AAC 40.180(b)(1)(A), but Gross has not alleged eligibility under those criteria.

While 7 AAC 40.180 has been amended since the events in question in this case, that amendment simply updated references to the Code of Federal Regulations without changing the substance or structure of the regulation. *Compare* former 7 AAC 40.180 (am. 1/11/06), *with* 7 AAC 40.180 (am. 12/7/13). We therefore refer to the regulation's most recent published version here.

[17]    7 AAC 40.180(c)(3), (4).

## B. Proceedings

Lester Gross applied for federal SSI benefits and state interim assistance benefits in December 2011. He claimed eligibility for both based on a serious mental disorder. The Department denied Gross's application for interim assistance. Based on information that Gross provided and using the five-step SSI analysis, the Department's disability adjudicator determined at step five that Gross was not likely to be found eligible for SSI because there was "other work in the national economy" that he could perform, and that he was therefore not eligible for interim assistance.

Gross requested a hearing, which was held in March 2012. The Department presented testimony from its disability adjudicator but not from a vocational expert. The hearing officer, interpreting 7 AAC 40.180 as incorporating all substantive and procedural aspects of the SSI analysis, concluded that Gross had failed to prove disability at step three. Proceeding to the remaining steps, however, the hearing officer concluded that under step five "the burden of proof shifts from the applicant to the agency" and that the Department had failed to meet its burden because it did not provide evidence that the jobs it identified for Gross actually existed in significant numbers in the national economy, nor had it provided the testimony of a vocational expert that Gross could perform those jobs. The hearing officer therefore found Gross eligible for interim assistance.

After both Gross and the Department filed proposals for agency action,[18] the Department's deputy commissioner issued a final decision.[19] The deputy

---

[18]    A proposal for action states a party's position as to whether the agency should adopt, reverse, modify, or take other action on a hearing officer's proposed decision. *See* AS 44.64.060(e).

[19]    *See* AS 44.64.060(e)(5) (stating that the agency may, "in writing, reject,
(continued...)

commissioner ruled that "7 AAC 40.180 incorporates *only* . . . steps 1, 2, and 3 of the SSI disability analysis" for determinations of eligibility for interim assistance, and that the regulation "*does not* require the Department to follow the analyses used in steps 4 and 5 of the SSI analysis."[20]  "In particular," the deputy commissioner concluded,

> 7 AAC 40.180 does not require the Department to present evidence through a vocational expert, and does not place any burden on the Department to prove[] (as SSA is required to do at step 5 of its analysis)[] that there is particular work in the national economy that the applicant is able to perform.

Accordingly, because the hearing officer had determined that Gross was not likely to be found disabled at step three of the SSI analysis — finding him disabled only at step five — the deputy commissioner determined that Gross was not eligible for state interim assistance.

Gross appealed the deputy commissioner's decision to the superior court, which reversed it.  Based on our decisions in *Moore v. Beirne*[21] and *State, Department of Health & Social Services v. Okuley*,[22] the superior court concluded that the Department, when determining eligibility for the state interim assistance program, must follow all five steps of the SSI analysis.

The Department petitioned for review.  It argued that neither AS 47.25.455 nor 7 AAC 40.180 requires it to undertake the full five-step federal analysis in evaluating

---

[19](...continued)
modify, or amend an interpretation or application in the proposed decision of a statute or regulation directly governing the agency's actions by specifying the reasons for the rejection, modification, or amendment, and issue a final agency decision").

[20]     Both emphases in original.

[21]     714 P.2d 1284 (Alaska 1986).

[22]     214 P.3d 247 (Alaska 2009).

eligibility for state interim assistance, and that its interpretation of the statute is otherwise permissible. The Department asked that we reverse the superior court's decision and reinstate the decision of the deputy commissioner.

We granted the petition.

## III. STANDARDS OF REVIEW

"When a superior court acts as an intermediate appellate court in an administrative matter, we review the merits of the agency's decision."[23]

The agency's decision in this case is based on its application of a regulation. When examining regulations that were properly promulgated, "[w]e limit our review to 'whether the regulations are consistent with and reasonably necessary to carry out the purposes of the statutory provisions and whether the regulations are reasonable and not arbitrary.' "[24] "In making the consistency determination, we use our independent judgment unless the 'issue involves agency expertise or the determination of fundamental policy questions on subjects committed to an agency.' "[25] "But the specific form our independent review takes is distinct from pure de novo review. We apply the substitution-of-judgment standard," by which we "adopt the rule of law that is most

---

[23]    *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 596 (Alaska 2011).

[24]    *Lakosh v. Alaska Dep't of Envtl. Conservation*, 49 P.3d 1111, 1114 (Alaska 2002) (alterations omitted) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971)); *accord Grunert v. State*, 109 P.3d 924, 929 (Alaska 2005); *see also* AS 44.62.030.

[25]    *Lakosh*, 49 P.3d at 1114 (quoting *O'Callaghan v. Rue*, 996 P.2d 88, 94 (Alaska 2000)). We have explained that " 'reasonable necessity is not a requirement separate from consistency' and the scope of review should center around consistency with the authorizing statute." *Bd. of Trade, Inc. v. State, Dep't of Labor, Wage & Hour Admin.*, 968 P.2d 86, 89 (Alaska 1998) (quoting *State, Bd. of Marine Pilots v. Renwick*, 936 P.2d 526, 531-32 (Alaska 1997)).

persuasive in light of precedent, reason, and policy, but in doing so we give due deliberative weight 'to what the agency has done, especially where the agency interpretation is longstanding.' "[26] In this case, the Department's interpretation is due little deference based on longevity;[27] Gross's case appears to be the first in which the Department has adopted the interpretation at issue here, as the deputy commissioner noted in her decision.[28]

## IV.    DISCUSSION

The Department argues that AS 47.25.455 does not require use of the full five-step SSI analysis to determine eligibility for interim assistance and that 7 AAC 40.180 — which the Department interprets as requiring only the first three steps — is therefore consistent with the statute. But because this interpretation of the statute would exclude from the interim assistance program an entire category of applicants potentially eligible for SSI, we reject the Department's argument.

---

[26]     *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013) (quoting *Chugach Elec. Ass'n, Inc. v. Regulatory Comm'n of Alaska*, 49 P.3d 246, 250 (Alaska 2002)).

[27]     *See, e.g.*, *Totemoff v. State*, 905 P.2d 954, 968 (Alaska 1995) (stating that "if agency interpretation is neither consistent nor longstanding, the degree of deference it deserves is substantially diminished" (citing *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 646 n.34 (1986))); *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 153 n.11 (Alaska 1994) (refusing to give agency's inconsistent statutory interpretation any deference).

[28]     While the Department suggests that it has advanced this argument in prior administrative proceedings, nothing in the record on appeal shows this to be the case. In the decision on Gross's application, the deputy commissioner observed: "The Department is mindful that the ALJ's proposed decision followed the interpretation of the Interim Assistance regulations previously applied by the Department's former Office of Hearings and Appeals, and the interpretation adopted by the Director of the Division of Public Assistance in the Director's Appeal decision issued on October 7, 2011 in OHA Case No. 11-FH-188."

**A.      Why We Apply The Substitution Of Judgment Standard Of Review**

The Department argues that determining eligibility for interim assistance is "a policy decision and a judgment squarely within the agency's area of expertise," which we should review only to determine whether it has a reasonable basis. We use reasonable basis review "when the interpretation at issue implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[29] Because the question in this case is one of statutory interpretation — requiring a determination of the legislature's intent in creating the interim assistance program — we conclude that the substitution of judgment standard of review is appropriate instead.

In support of its argument for reasonable basis review, the Department cites *Marathon Oil Co. v. State*.[30] In that case we examined whether the Department of Natural Resources had permissibly denied a lessee's request to apply retroactively a specific methodology for calculating royalties on gas leases.[31] We found the governing statute ambiguous as to "whether retroactive contract pricing is permitted."[32] We applied the reasonable basis standard of review because of our recognition that "[a]llowing retroactivity could have important consequences for how royalties are assessed and

---

[29]      *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (citing *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[30]      254 P.3d 1078 (Alaska 2011).

[31]      *See id.* at 1081-82.

[32]      *Id.* at 1085.

paid," consequences the agency was more qualified than the courts to weigh.[33] We observed that "[t]he state royalty and audit system is complicated, and DNR has expertise in deciding when retroactive application makes sense within that system."[34] We also noted that we were "especially inclined to defer when the agency's statutory interpretation is long-standing," as it was in *Marathon Oil*.[35]

The question in this case is whether the Department may, consistent with the interim assistance statute, definitionally exclude persons who are eligible for SSI from eligibility for state interim assistance. Unlike *Marathon Oil*, answering that question does not require the "resolution of policy questions which lie within the agency's expertise and are inseparable from the facts underlying the agency's decision."[36] Rather, the answer depends on the legislature's intent in creating the interim assistance program. "The question whether [the Department] properly interpreted the legislature's mandate . . . is answerable through 'statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience.' Because this preliminary legal question resides within the traditional province of judicial

---

[33]     *Id.* at 1082.

[34]     *Id.*

[35]     *Id.* at 1085.

[36]     *Id.* (quoting *Earth Res. Co. v. State, Dep't of Revenue*, 665 P.2d 960, 964 (Alaska 1983)).

review and involves no technical expertise,"[37] we employ the substitution of judgment standard.[38]

The Department also urges us to defer to its interpretation because the adult public assistance statutes — of which the interim assistance program is a part — generally grant it the authority to "adopt regulations, not inconsistent with law, defining need, [and] prescribing the conditions of eligibility for assistance."[39] But the grant of regulatory authority in this case is unlike the broad grants of authority at issue in cases in which we have deferred to an agency decision.[40] Instead, because the issue is one of statutory interpretation, we apply the substitution of judgment standard, giving little deference to the agency's new interpretation of the law, as explained above.[41]

---

[37] *Lakosh v. Dep't of Envtl. Conservation*, 49 P.3d 1111, 1117 (Alaska 2002) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971)).

[38] *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013) ("Because the interpretation involves legislative intent rather than agency expertise, we apply independent review here.").

[39] AS 47.05.010(9).

[40] *Cf. Kenai Peninsula Fisherman's Coop. Ass'n v. State*, 628 P.2d 897, 903 (Alaska 1981) (reasoning that a statute allowing the Board of Fisheries to "make regulations it considers advisable" indicated "that the legislature intended to give the Board discretion to decide methods of regulation"); *Kelly v. Zamarello*, 486 P.2d 906, 912 (Alaska 1971) (reasoning that a statute for competitive oil and gas leasing describing "such bonus as may be accepted by the Commissioner" of DNR indicated "that the legislature intended to give the Commissioner broad authority to determine the kind of bonus he will accept").

[41] *See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 902-04 (Alaska 1987) ("Tesoro argues that we should apply the 'reasonable basis' standard because the issues raised in these cases involve agency expertise and fundamental policy considerations in an area where the administrative agency has been

(continued...)

Finally, in deciding this appeal we do not need to address whether the Department's decision of Gross's case has a reasonable basis in the regulation.[42] For purposes of our decision we assume that the Department's application of 7 AAC 40.180 was based on a reasonable interpretation of it, leaving for our independent review only the question whether the regulation as so interpreted is consistent with the statute it was intended to implement.

**B.      A Failure To Consider Steps Four And Five Of The SSI Analysis In Determining Eligibility For Interim Assistance Is Inconsistent With AS 47.25.455.**

The Department argues that nothing in AS 47.25.455 mandates use of the complete five-step federal SSI analysis to assess eligibility for state interim assistance, and that its interpretation of 7 AAC 40.180 as incorporating only the first three steps is therefore consistent with the statute. In particular, the Department argues that it is not required, as it would be at step five of the SSI analysis, to carry the burden of proving the existence of other work in the national economy that the applicant can perform, or to present expert testimony on that subject. We agree that the Department is not required to exactly replicate all procedural aspects of the five-step analysis; however, to the extent the Department's interpretation excludes from interim assistance an entire category of

---

[41](...continued)
granted broad regulatory authority. . . . [But b]ecause this case involves statutory interpretation, we conclude that the independent judgment test is the appropriate standard of review."); *supra* notes 27-28 & accompanying text.

[42]      *Cf. Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 294, 301 (Alaska 2014) ("Assuming a regulation is valid, we review whether an agency's interpretation of its regulation is plainly erroneous and inconsistent with the regulation — i.e., whether it has a reasonable basis." (citation omitted) (internal quotation marks omitted)).

disabled applicants — those who are entitled to federal benefits only because of step five — it is inconsistent with the statute.

Alaska Statute 47.25.455(a) provides that "[t]he department shall pay at least $280 a month to a person eligible for assistance under this chapter while the eligibility of the person for benefits under [the SSI program] is being determined."  The Department contends that, because the statute requires that interim assistance be provided "while the eligibility of the person" for SSI is being determined, the legislature could not have intended that the Department apply the same analysis as that used by the federal government to determine SSI eligibility.  It argues that the structure of the adult public assistance statutes in general supports its interpretation.[43]

"[W]e interpret [a] statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[44]  The language and structure of the relevant statutes do not directly answer the question whether the test for state interim assistance must be the same as that for SSI, but they do suggest that the two should closely track.  Alaska Statute 47.25.455 specifies that benefits are to be paid "to a person eligible for assistance under this chapter while

---

[43]     The Department also argues that the "policy and purpose" of Alaska Statutes Chapter 47 generally is "to cooperate and coordinate with the United States government in administering public assistance," a purpose which is fulfilled through the reimbursement agreement between the state and federal governments, rather than through an identical definition of disability.  The provisions allowing for reimbursement of interim assistance payments from the federal government, however, were not part of the initial interim assistance program, ch. 138, § 18, SLA 1982, and their subsequent addition, ch. 29, § 6, SLA 1993, did not imply a change in the overall purpose of or conditions of eligibility for the program.  *See, e.g.*, 1993 House Journal 87-88 (Governor's transmittal letter); Testimony of Jan Hansen, Div. of Pub. Assistance, at 33:30–34:45, Hearing on H.B. 67 Before the House Judiciary Comm., 18th Leg., 1st Sess. (Mar. 15, 1993) (discussing interim assistance).

[44]     *Louie v. BP Exploration (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014).

the eligibility of the person for benefits under [the federal SSI program] is being determined"; the adult public assistance chapter specifies that a person is eligible if he or she is disabled, and it defines "disabled" in the same way the federal SSI program defines it.[45] The Department is correct, however, that the text of AS 47.25.455, which requires interim assistance payments "while the eligibility of the person for benefits under [SSI] is being determined" and therefore contemplates a more expedited decision, does not necessarily require that the test for interim assistance be exactly the same as the test for SSI.

We directly addressed the interim assistance statute once before.[46] In *Moore v. Beirne*, we held that AS 47.25.455 did not permit the Department to terminate interim assistance benefits based on the federal authorities' preliminary denial of SSI benefits, but instead that interim assistance benefits must continue until the applicant's

---

[45] *Compare* AS 47.25.615(5) (defining "disabled" as "being unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months"), *with* 42 U.S.C. § 1382c(a)(3)(A) (2012) (stating that "an individual shall be considered to be disabled for purposes of [the SSI program] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"); *see also* 7 AAC 40.030 (stating that, to be eligible for adult public assistance, "[a]n applicant must meet the eligibility requirements of the SSI program . . . and the eligibility requirements set forth in [the Adult Public Assistance] chapter").

[46] While the parties discuss our decision in *State, Dep't of Health & Soc. Servs. v. Okuley*, 214 P.3d 247 (Alaska 2009), that case does not affect our analysis here. The facts underlying *Okuley* related to the Department's failure to comply with the Administrative Procedure Act in enacting a prior version of 7 AAC 40.180. *See id.* at 249-50 & 250 n.6. The merits of the case, however, related to attorney's fees issues raised in subsequent class-action litigation, *see id.* at 252-58, and did not involve the interim assistance program itself.

SSI appeals had been exhausted and the Social Security Administration made a final decision on her entitlement to federal benefits.[47] The Department argues that nothing in *Moore* requires it to use the full five-part SSI analysis, and that *Moore* supports its interpretation of the statute because we recognized in that case that applicants for interim assistance and SSI are not similarly situated for equal protection purposes.[48]

The Department is partly correct. As we noted in *Moore*, the legislature in creating the interim assistance program intended to codify the Department's past practice of paying state benefits to SSI applicants while their entitlement to federal benefits was being determined.[49] At that time, eligibility for interim assistance was assessed simply through the report of an accredited physician about the applicant's likely entitlement to federal benefits,[50] a process far less rigorous than the current one. Nothing in *Moore* requires the Department to exactly replicate the SSI analysis when it assesses eligibility for interim assistance.

However, as we noted in *Moore*, "[t]he purpose of interim assistance is to alleviate hardship on applicants for SSI during the application period,"[51] and the history of the program confirms that the legislature intended benefits to be broadly available to meet this purpose. It was recognized during development of the program that the waiting

---

[47]    714 P.2d 1284, 1287 (Alaska 1986).

[48]    *See id.* at 1287-88.

[49]    *Id.* at 1286; *see also* Testimony of Rod Betit, Director, Div. of Pub. Assistance, at 48:30–51:30, Hearing on C.S.H.B. 357 (Rules) Before the Sen. Health, Educ. & Soc. Servs. Comm., 13th Leg., 1st Sess. (May 5, 1982).

[50]    *Moore*, 714 P.2d at 1285 ("Interim assistance payments are granted after a preliminary examination of the applicant by a physician or psychiatrist." (citing prior version of 7 AAC 40.180)).

[51]    *Id.*

time for a determination of SSI eligibility was growing longer, and that assistance otherwise available to meet applicants' basic needs during this period was insufficient.[52] Furthermore, when enacting the interim assistance program into law, the legislature eliminated the availability of other benefits pending a final SSI determination — benefits for which all SSI applicants had formerly been eligible — intending that interim assistance fill the gap.[53]

And as already noted, the method of assessing eligibility at the time of the statute's passage involved a much less rigorous process; rather than satisfying the federal eligibility criteria, an applicant for interim assistance had merely to "demonstrate[] some likelihood of meeting the statutory criteria for eligibility."[54] As the legislature intended to adopt the program currently in operation when it codified interim assistance,[55] this again suggests a broadly available benefit. The interim assistance statute has been

---

[52]    *See* Testimony of Rod Betit, Director, Div. of Pub. Assistance, at 48:30–51:00, Hearing on C.S.H.B. 357 (Rules) Before the Sen. Health, Educ. & Soc. Servs. Comm., 13th Leg., 1st Sess. (May 5, 1982) (discussing development of the program codified as interim assistance in AS 47.25.455).

[53]    Medicaid coverage for the interim period was eliminated as part of the package of legislation that included AS 47.25.455. Ch. 138, § 13, SLA 1982 (codified as amended at AS 47.07.020(e)); Testimony of Rod Betit, Director, Div. of Pub. Assistance, at 48:20–51:00, Hearing on C.S.H.B. 357 (Rules) Before the Sen. Health, Educ. & Soc. Servs. Comm., 13th Leg., 1st Sess. (May 7, 1982) (discussing genesis of program codified as Interim Assistance); Comments of Chairman Charlie Parr, at 06:30–11:00, 43:45–45:00, Hearing on C.S.H.B. 357 (Rules) Before the Sen. Health, Educ. & Soc. Servs. Comm., 13th Leg., 1st Sess. (May 7, 1982) (discussing cuts to Medicaid benefits granted to individuals prior to a full federal disability determination and proposal to increase amount of Interim Assistance granted to cover medical bills prior to final determination).

[54]    *Moore*, 714 P.2d at 1287.

[55]    *See supra* note 49.

amended since its codification, but nothing in the later legislative history alters its broadly inclusive purpose.

Also aiding our analysis is the rule "that a remedial statute is to be liberally construed to effectuate its purposes."[56] Federal courts have recognized that the Social Security Act is remedial and must therefore be liberally construed.[57] We recognize the same remedial purposes in Alaska's interim assistance program, which — as part of Alaska's adult public assistance statutes — is intended "to furnish financial assistance *as far as practicable* to needy aged, blind, and disabled persons, and to help them attain self-support and or self-care."[58]

The Department's interpretation of 7 AAC 40.180 to include only steps one, two, and three of the SSI analysis in determining eligibility for interim assistance would render an entire category of persons who are eligible for SSI — those deemed disabled at step five — ineligible for interim assistance. While the Department asserts that "[n]o argument or findings have been made in this case to support a theory that [its] interpretation of interim assistance actually results in an under-inclusive granting of

---

[56]     *State ex rel. Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1157 (Alaska 1984).

[57]     *See Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir. 1982) ("The Social Security Act is remedial, to be construed liberally."); *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969) ("[T]he Social Security Act is a remedial statute, to be broadly construed and liberally applied."); *see also Granberg v. Bowen*, 716 F.Supp. 874, 878 (W.D.Pa. 1989) (stating that the Supplemental Security Income program "is to be construed liberally to further its remedial purposes").

[58]     AS 47.25.590(b) (emphasis added).

interim assistance benefits to individuals later adjudicated disabled by SSI," such under-inclusion is an inevitable result of the Department's interpretation.[59]

The Department is certainly correct that it is consistent with AS 47.25.455 to limit interim assistance benefits to those "likely to be found disabled"[60] by the Social Security Administration for purposes of SSI and that, in doing so, it need not exactly replicate the entire set of procedures the Administration employs to determine eligibility for the federal program. However, the Department may not exclude from eligibility for interim assistance the entire category of persons eligible for SSI at step five.[61] We leave it to the Department to decide in the first instance how it will satisfy the statutory mandate.

---

[59] Counsel for the Department suggested at oral argument before us that its three-step application of 7 AAC 40.180 effectively incorporates the substance of steps four and five because subsection (c)(4) provides that "[i]n determining whether an applicant's disability meets the criteria set out in (b)(1)(B) of this section" (which is essentially step three of the SSI analysis), "the department will consider whether . . . the applicant can perform any other work, including sedentary work." But the SSI analysis explicitly *excludes* consideration of vocational factors, such as the ability to perform other work, at step three. 20 C.F.R. § 416.920(d) (2014) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled *without considering your age, education, and work experience.*") (emphasis added). Under the Department's interpretation, therefore, consideration of vocational factors could only serve to exclude from state benefits those who would be entitled to federal benefits at step three.

[60] 7 AAC 40.180.

[61] Gross also argues that, by deciding his case based on a new interpretation of 7 AAC 40.180 imposed by the commissioner after the hearing, the Department violated his due process rights. Because we decide today that fuller consideration of Gross's case is required under AS 47.25.455, we do not reach his due process claim.

## V. CONCLUSION

We AFFIRM the superior court's decision in part, REVERSE it in part, and REMAND to the Department for proceedings consistent with this opinion.