*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CITY OF SOLDOTNA, | ) |
| | ) Supreme Court No. S-18538 |
| Appellant, | ) |
| | ) Superior Court No. 3KN-21-00054 CI |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, LOCAL | ) |
| BOUNDARY COMMISSION, | ) No. 7722 – September 27, 2024 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Lance Joanis, Judge.

Appearances: Brooks W. Chandler, Samuel C. Severin, and Kody George, Chandler, Falconer, Munson & Cacciola, LLP, Anchorage, for Appellant. Eugene F. Hickey and William E. Milks, Assistant Attorneys General, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

The City of Soldotna sought to expand its boundaries by annexing adjacent land. It submitted an annexation petition to the Local Boundary Commission (Commission); if approved Soldotna intended to proceed by legislative review of the petition. The Commission voted to convert the petition and subject it to a local vote

instead, exercising its authority pursuant to a regulation that had not previously been used. Soldotna appealed the Commission's decision and the superior court affirmed. Soldotna now appeals, arguing that the Commission exceeded its authority, that the underlying regulation was invalid because it lacked standards and was required to undergo the rulemaking process, that there was not a sufficient basis in the record for its decision, and that the decision was internally inconsistent. We conclude that the Commission acted within its statutory grant of authority and had a reasonable basis for converting the petition. We therefore affirm the superior court's decision upholding the Local Boundary Commission's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Local Boundary Commission Background

Article X, section 12 of the Alaska Constitution requires the legislature to establish a local boundary commission to handle proposed changes to local government boundaries.[1] We previously concluded that the constitutional delegates believed that "local political decisions do not usually create proper boundaries and that boundaries should be established at the state level,"[2] because "[b]y placing authority in this third-party, arguments for and against boundary change can be analyzed objectively."[3] To further the statewide approach to setting boundaries, the legislature created the Local Boundary Commission with five members appointed by the governor for overlapping

---

[1]    Alaska Const., art. X, § 12 ("A local boundary commission or board shall be established by law in the executive branch of the state government. The commission or board may consider any proposed local government boundary change.").

[2]    *Fairview Pub. Util. Dist. No. One v. City of Anchorage*, 368 P.2d 540, 543 (Alaska 1962).

[3]    *Id.* (quoting 6 Proceedings of the Alaska Constitutional Convention (PACC) App. V at 50 (Dec. 19, 1955)).

five-year terms.[4]  There is one commissioner representing each of the four judicial districts and a final member at large who acts as the Commission's chair.[5]

Article X, section 12 declares that the Commission may:  "consider any proposed local government boundary change," "present proposed changes to the legislature during the first ten days of any regular session," and "establish procedures whereby boundaries may be adjusted by local action."[6]  In doing so, the constitutional delegates made clear that those pursuing annexation could seek Commission approval to proceed by either legislative review of their petition or local action.

### B.    Soldotna's Annexation Petition

Soldotna has annexed land four times in the past:  over 40 acres in 1984; 4 acres in 1987; 1.45 acres in 1993; and 1.72 acres in 2007.  Each time the annexation was done through unanimous consent, a form of local action that does not require voter approval.[7]  When Soldotna began the process leading to this appeal, it was 7.4 square miles and had a population of under 5,000.

---

[4]     AS 44.33.810.

[5]     *Id.*

[6]     Alaska Const., art. X, § 12.

[7]     3 Alaska Administrative Code (AAC) 110.150 lays out the three ways of proceeding by local action following Commission approval:

> (1) city ordinance if the territory is wholly owned by the annexing city;
>
> (2) city ordinance and a petition signed by all the voters and property owners of the territory;
>
> (3) approval by a majority of votes on the question cast by voters residing in
>
> > (A) the territory; and
> >
> > (B) the annexing city.

In 2015 Soldotna published a website with information about a proposal to annex nine areas adjacent to current city boundaries. In 2017 the city held a series of informational meetings and mailed letters to every landowner in the nine areas inviting them to participate in the process, but overall public participation was about 2%. Participants were generally opposed to annexation and expressed distrust and skepticism about the value of city services and the necessity of city regulations; many objected to imposing the city on people who had made a conscious choice to live outside its limits. The Kenai Peninsula Borough adopted a resolution in September 2018, opposing annexation and encouraging Soldotna to seek voter approval for annexation.

In 2019 Soldotna decided to seek annexation of seven of the original nine areas. It shared a draft petition with the public and held a public pre-submission hearing in September 2019. Those who attended the hearing generally opposed annexation. The city council then narrowed the petition to seek annexation of fewer areas.

Soldotna submitted the modified petition to the Commission in December, seeking to annex 2.63 square miles by legislative review. In the petition Soldotna argued that recent commercial development and population growth at its periphery had increased demand on city services and infrastructure while it undermined the tax base that funded those services. It sought to address "critical concerns" about its future capacity to deliver essential services through annexation.

The Commission opened a public comment period on the petition from December 2019 through February 2020. Commission staff issued a preliminary report in May 2020 that recommended approval and submission of the petition to the legislature. Addressing public comments that called for approval by local option, the preliminary report noted that setting city boundaries was "legitimately the concern of the state, and not just that of the local community." A final staff report was issued in July 2020, concluding that the petition met requirements to pursue annexation through legislative review.

The Commission held a public hearing on the petition in August. Public opinion was markedly negative, though several residents spoke in favor of annexation. The following day, the Commission held a decisional meeting to discuss the petition. A motion to approve the petition by legislative review was made and seconded. A commissioner then proposed converting the petition from legislative review to local option under 3 AAC 110.610(a)[8] in light of the opposition voiced at public hearings.

The Commission scheduled a continued meeting in October and recessed. At the October meeting the Commission accepted a statement from Soldotna opposing the proposal to pursue annexation by local action instead of by legislative review. The Commission met a third time nine days later to discuss the proposal to convert the petition to local option. A motion to convert the petition to the local option eventually passed by a 3-2 vote. The Commission issued its written decision in late December 2020. The two commissioners that favored legislative review wrote a dissenting opinion.

### C. Superior Court Appeal

Soldotna appealed to the superior court from the Commission's decision to convert the petition. Soldotna argued that the Commission's decision conflicted with article X, section 12, that the Commission's decision was irrational because it was contrary to the best interests of the State, and that the Commission had failed to adopt regulatory standards and define key terminology. The superior court upheld the Commission's decision in September 2022. It held that 3 AAC 110.610, the regulation under which the Commission acted, was authorized by the Alaska Constitution and that the Commission's decision to convert the petition was reasonable.

---

[8] This regulation provides: "The commission may determine during the course of proceedings that a legislative review petition must be amended and considered as a local action or local option petition if the commission determines that the balanced best interests of the locality and the state are enhanced by local participation."

Soldotna now appeals the superior court order. Soldotna argues the Commission exceeded its statutory authority in violation of Alaska's Administrative Procedure Act (APA). It argues that the regulation on which the Commission relied lacks sufficient standards and that its application to the petition is unconstitutional. It also argues that because the Commission had never previously relied on 3 AAC 110.610(a), it was required to go through the rulemaking process before doing so. It also argues that even if rulemaking was not required, the Commission's decision failed to provide sufficient basis for judicial review. Finally, it argues that the superior court erred by finding that there was sufficient evidence to support the Commission's decision, which it claims is "internally inconsistent." Because the Commission acted within its discretion, we affirm the conversion of Soldotna's petition to local action.

## III. STANDARD OF REVIEW

"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision" and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9] No deference is given to the superior court's decision.[10] Depending on the issue being reviewed, we apply one of four standards of review: "(1) the substantial evidence standard applies to questions of fact; (2) the reasonable basis standard applies to questions of law involving agency expertise; (3) the substitution of judgment standard applies to questions of law where no expertise is involved; and (4) the reasonable and not arbitrary standard applies to review of administrative regulations."[11] An agency's

---

[9] *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72-73 (Alaska 2013).

[10] *Usibelli Coal Mine, Inc. v. State, Dep't of Nat. Res.*, 921 P.2d 1134, 1141 (Alaska 1996).

[11] *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 739 (Alaska 2012) (quoting *Alaskan Crude Corp. v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 419 (Alaska 2011)).

interpretation of its own regulations and exercise of discretionary authority are also reviewed using the reasonable basis standard.[12]

## IV. DISCUSSION

### A. The Local Boundary Commission Had Authority Under 3 AAC 110.610(a) To Convert The Petition.

In 1992 the Commission adopted 3 AAC 110.610(a), which provides: "The commission may determine during the course of proceedings that a legislative review petition must be amended and considered as a local action or local option petition if the commission determines that the balanced best interests of the locality and the state are enhanced by local participation." It also adopted 3 AAC 110.590(e), which similarly allows the Commission to consider a local action petition as one for legislative review if "the balanced best interests of the locality and the state are enhanced by statewide participation." The Commission relied on 3 AAC 110.610(a) to convert Soldotna's petition from one for legislative review to one for local action, and Soldotna challenges the Commission's use of that regulation.

#### 1. The adoption of 3 AAC 110.610(a) did not exceed the Commission's statutory grant of authority.

Soldotna argues that the Commission exceeded its authority under AS 44.33.812(a)(2) to adopt regulations because 3 AAC 110.610(a) lacks standards or procedures. Soldotna also argues that the regulation conflicts with AS 29.06.040(d)'s preference for legislative review of boundary changes.[13]

---

[12] *North Slope Borough v. State, Dep't of Educ. & Early Dev.*, 484 P.3d 106, 113 (Alaska 2021).

[13] *See* AS 29.06.040(d) ("A boundary change effected [through legislative review] prevails over a boundary change initiated by local action, without regard to priority in time.").

To determine whether an agency has authority under Alaska's APA[14] to promulgate a regulation, we apply the test articulated in *O'Callaghan v. Rue*.[15] The first step is to determine "whether the legislature delegated to the administrative agency the authority to promulgate regulations."[16] Because this requires interpretation of the underlying statute, it is a legal question to which we apply our independent judgment.[17] If we are satisfied that the delegation was made, the second step is to consider whether "the regulation is consistent with and reasonably necessary to implement the statutes authorizing its adoption" and whether the regulation is "reasonable and not arbitrary."[18] Because the regulation here involves agency expertise, we employ a rational basis standard and will defer to the agency's determination so long as it is reasonable.[19] Finally, we consider whether the regulation conflicts with any other state statutes or constitutional provisions; this is another legal question to which we apply our independent judgment.[20] Because we presume the validity of an administrative regulation, the challenger bears the burden of proving it is invalid.[21]

As an initial matter, the Alaska Constitution plainly directed the legislature to "establish[ ] . . . [a local boundary commission] in the executive branch of the state government."[22] The legislature fulfilled that requirement by enacting AS 29.06.040, and AS 44.33.810 and .812. Alaska Statute 44.33.812(a)(2) specifically

---

[14]    *See* AS 44.62.010 et seq.

[15]    996 P.2d 88 (Alaska 2000).

[16]    *Id.* at 94.

[17]    *Id.*

[18]    *Id.*

[19]    *See id.*

[20]    *Id*. at 95.

[21]    *Id.*

[22]    Alaska Const., art. X, § 12.

granted discretionary authority to the Commission to "establish procedures whereby boundaries may be adjusted by local action."[23] These statutory delegations clearly authorize the Commission to promulgate regulations.[24]

We next consider whether the Commission's regulation is consistent with and reasonably necessary to implement AS 29.06.040 and AS 44.33.812. "Reasonable necessity is not a requirement separate from consistency and the scope of review should center around consistency with the authorizing statute."[25]

The regulation to which Soldotna objects, 3 AAC 110.610(a), is not inconsistent with AS 29.06.040(d)'s preference for legislative review petitions as Soldotna claims. The preference for legislative review does not suggest that the Commission is not entitled to decide whether local action is appropriate for a petition to move forward. Rather, by clarifying that a boundary change effected by legislative review "prevails over a boundary change initiated by local action," the statute informs the Commission of how to proceed when it is confronted with conflicting proposals. Neither 3 AAC 110.610(a) nor 3 AAC 110.590(e) addresses such scenarios or otherwise conflicts with the statute's directive.

Soldotna also argues that the regulation is not consistent with AS 44.33.812(a)(2)'s directive to "provid[e] standards and procedures for municipal . . . annexation" because it does not provide sufficient guidance to petitioners or the Commission about how or when a petition for legislative review should be converted

---

[23]     *See id.*

[24]     *Cf. O'Callaghan*, 996 P.2d at 95 (holding statutory language granting commissioner authority to "authorize other uses" and prescribing penalties for "[a] person who violates this section *or a regulation adopted under it*" reflected clear legislative intent that regulations should be adopted under statute) (emphasis in original).

[25]     *City of Valdez v. State*, 372 P.3d 240, 246 (Alaska 2016) (internal quotation marks and brackets omitted) (quoting *State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance v. Gross*, 347 P.3d 116, 121 n.25 (Alaska 2015)).

to one for local action. But 3 AAC 110.610(a) does provide a standard: the Commission must balance the "best interests of the locality and the state" before converting the petition. And it provides a procedure by which annexation may be approved by local vote that is not inconsistent with the statute. Alaska Statute 29.06.040 expressly requires the Commission to do just that[26] — the annexation procedures "must include" provisions for approval by majority vote of those residing in the annexing municipality and those in the area to be annexed.[27] This language signals that the legislature considered situations in which it would be appropriate for the Commission to involve the public in approving annexation petitions. It is also consistent with the broad latitude granted to the Commission in the Constitution to "establish procedures" for local action.[28]

Given the history of local boundary changes in Alaska, it appears unlikely a municipality would request that their annexation petition proceed by voter approval.[29] Without a regulation making it possible for the Commission to convert petitions in certain circumstances, this provision required by statute would become a "hollow mechanism," as the superior court observed. Because local boundary determinations are within the Commission's expertise, we need not decide whether 3 AAC 110.610(a)

---

[26]    *See* AS 29.06.040(c) ("In addition to the regulations governing annexation by local action adopted under AS 44.33.812, the Local Boundary Commission *shall* establish procedures for annexation and detachment of territory by municipalities by local action.") (emphasis added).

[27]    AS 29.06.040(c).

[28]    Alaska Const. art. X, § 12.

[29]    *See Fairview Pub. Util. Dist. No. One v. City of Anchorage*, 368 P.2d 540, 543-44 (Alaska 1962) (acknowledging "most determined opposition" to annexation by Anchorage of highly populated areas outside of city boundaries following World War II despite fact that streets on either side of official city boundaries were "indistinguishable" from one another and formed single urban community with common "social and economic existence").

is the best way to implement AS 29.06.040 and AS 44.33.812, only whether it is reasonable. It was reasonable and not arbitrary for the Commission to adopt 3 AAC 110.610(a) to implement those statutes.

Finally, the regulation does not conflict with other state statutes or constitutional provisions. Soldotna argues broadly that the Commission's constitutional obligation is to make decisions about municipal boundaries apart from the political process and local self-interest. But as the State argues, the constitutional delegates would not have included reference to local action if public opinion within the community was not to be a consideration at all. We recognize that the circumstances of the Commission's creation and the delegates' underlying concern that "a small, self-interested group could stand in the way of boundary changes which were in the public interest" could weigh against requiring voter approval in many circumstances.[30] But the regulation gives effect to a constitutional provision rather than conflicting with it. And the presumptive validity of administrative regulations lends further support to the Commission's authority to promulgate a regulation setting forth procedures for proceeding through local action.[31]

The Commission did not exceed its statutory authority when it promulgated 3 AAC 110.610(a).

### 2. The regulation establishes a "balanced best interests" standard.

Soldotna argues that 3 AAC 110.610(a) is not enforceable because it lacks regulatory standards. Relying on *U.S. Smelting, Refining & Mining Co. v. Local Boundary Commission*, it argues the Commission's discretion to approve annexation is "conditioned upon the development of standards and procedures for changing boundary

---

[30] *Port Valdez Co., Inc. v. City of Valdez*, 522 P.2d 1147, 1150 n.7 (Alaska 1974) (referencing *Fairview*'s discussion of Constitutional Convention minutes).

[31] *See O'Callaghan v. Rue*, 996 P.2d 88, 94-95 (Alaska 2000).

lines."[32]  Soldotna asserts that the regulation is invalid because terms in the regulation, such as "locality" and "enhanced," are not defined and no criteria are provided to guide the Commission's determination.

Fifty years ago in *U.S. Smelting*, we overturned the Commission's approval of an annexation petition because the Commission had failed to develop "standards and procedures" for changing local boundary lines as required by statute.[33] We concluded that the Commission first had to comply with duties outlined in AS 44.19.260(a) before it could exercise the discretionary functions in subsection (b).[34] Because the development of standards and procedures was mandatory, the Commission's failure to develop them deprived the Commission of authority to consider local government boundary changes.

Soldotna argues that 3 AAC 110.610(a) similarly lacks "standards with established factors."  It points to other regulations, such as 3 AAC 110.042, 3 AAC 110.065, and 3 AAC 110.135, which include relevant factors and cross references to other regulations or statutes, and it contends that 3 AAC 110.610(a)'s lack of specificity "is a failure to follow the statutory mandate."  But there were no standards in the regulation we considered in *U.S. Smelting*.  We held that the complete lack of standards deprived the Commission of authority;[35] we did not require that the standards it would develop must include multiple factors or be as detailed as other Commission regulations.  We simply required the Commission to develop standards.

3 AAC 110.610(a) permits the Commission to convert a legislative review petition to a local action petition if it determines that the "balanced best interests of the

---

[32]    489 P.2d 140, 142 (Alaska 1971) (invalidating approval of annexation petition for lack of regulatory standards).

[33]    *Id.* at 141-42.

[34]    *Id.* at 142 n.6.

[35]    *Id.* at 142.

-12-                                                              7722

locality and state are enhanced by local participation." This "balanced best interests" standard is also used in 3 AAC 110.590(e), which allows the Commission to do the reverse: it may convert a local action petition to a legislative review petition if it determines that the "balanced best interests of the locality and the state are enhanced by statewide participation." We recognize that there is little regulatory history to help define this broad standard. Because the Commission had not previously converted a legislative review petition to one by local action, it was appropriate for the commissioners to exercise their discretion in light of their expertise to interpret the regulation.

The "balanced best interests" standard is broad, but its requirement that the Commission consider both the locality's and the State's best interests provides sufficient guidance to the Commission. Both 3 AAC 110.610(a) and 3AAC 110.590(e) need no additional standards to be enforceable; we therefore reject Soldotna's argument.

### 3. The APA's notice and comment requirements were not triggered by the Commission's use of the regulation.

The APA requires that regulations meet notice and comment requirements before becoming effective.[36] While the term "regulation" is defined broadly and "may require rulemaking in cases in which an agency's interpretation of a statute is expansive or unforeseeable . . . , obvious, commonsense interpretations of statutes do not require rulemaking."[37]

Soldotna argues that rulemaking was required to use 3 AAC 110.610(a) because the decision to convert the annexation petition was a "significant departure from precedent" that was unforeseeable and added requirements of substance. It also

---

[36] AS 44.62.190–.215; *Alyeska Pipeline Serv. Co. v. State, Dep't of Env't Conservation*, 145 P.3d 561, 572 (Alaska 2006).

[37] *Alyeska Pipeline Serv. Co.*, 145 P.3d at 573.

claims the Commission engaged in "an improper act of rulemaking" under the standard we recently laid out in *AVCG, LLC v. State, Department of Natural Resources*.[38]

In *AVCG* we explained that "an agency's interpretation of an existing statute or regulation requires rulemaking if it adds requirements of substance, is unforeseeable, or changes the agency's approach."[39] An agency adds a requirement of substance when it invents "specific criteria or values that clarif[y] the existing statutory or regulatory standard and require[] the public to comport with precise criteria not specified in existing rules."[40] Soldotna claims that the Commission engaged in "an improper act of rulemaking" because it invented new criteria, was unforeseeable, and constituted a change of course.

Soldotna asserts that by invoking its history of annexation by unanimous consent, the Commission created a new criterion, under which past use of unanimous consent will prevent future legislative review petitions. But the Commission's discussion of Soldotna's past annexations by unanimous consent did not indicate that it was a "definitive and strict" requirement, as Soldotna claims. Its consideration of the past annexations suggests instead that when the Commission exercises its discretion it is empowered to consider local history as part of its balancing of the locality's best interests against the State's. Additionally, the Commission's consideration of how to define terms in the regulation — like "enhanced," "locality," and "balanced best interests" — more closely resembles "interpret[ing] a broad phrase" than imposing a new criterion.[41] The standard applied in *AVCG* — whether allowing an overriding royalty interest would "adversely affect the interests of the State" — was similarly

---

**38** 527 P.3d 272 (Alaska 2023).

**39** *Id.* at 281.

**40** *Id.* (quoting *Chevron U.S.A., Inc. v. State, Dep't of Revenue*, 387 P.3d 25, 37 (Alaska 2016) (alterations in original)).

**41** *See id.*

broad and general, and we explained it did not constitute adding a "requirement[] of substance."[42] Neither does the standard here.

Soldotna also argues that the Commission's decision was unforeseeable and "does not make sense." It asserts that the Commission framework was intended to "take the process of annexation out of local elections" and "[t]he annexation method selected by a petitioning municipality had always been respected by the Commission." Soldotna distinguishes *AVCG* by noting that the standard that survived challenge there was " 'developed through a series of past adjudications,' not created out of thin air" as Soldotna believes occurred with its petition.[43]

But the Commission applied 3 AAC 110.610(a) just as it was written. We reiterated in *North Slope Borough v. State, Department of Education & Early Development* that when an agency's interpretation "simply interprets the statute 'according to its own terms,' the agency is not required to adopt the interpretation as a regulation under the APA."[44] The same is true when an agency acts in accordance with the plain language of a regulation. So even though it had not been used before, the regulation allowing the Commission to convert a petition had existed since 1992 and the Commission applied it just as it was written.

Soldotna's final argument that converting its petition to local option amounted to a change of course reiterates that this was the first time in the Commission's history that it had converted a legislative review petition to proceed by local action. In *AVCG* we rejected the argument that "an agency can never apply an existing statutory standard to the particular facts of a case without first identifying the

---

**42**      *Id.* at 277, 281.

**43**      *See id.* at 276.

**44**      484 P.3d 106, 118 (Alaska 2021) (quoting *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 742 (Alaska 2012)).

key facts in a rulemaking."[45]  Simply applying a regulation for the first time does not make the Commission's decision invalid.  To find otherwise would improperly constrain agencies from exercising their discretion in making policy choices simply because they waited too long to do so.

**B.    The Commission's Decision To Convert The Petition Was Reasonable.**

Soldotna argues that the Commission's decision did not have a reasonable basis because there is not sufficient evidence in the record to support it.  Soldotna also argues that tasking voters with evaluating annexation decisions is an abdication of the Commission's responsibility and contrary to the Commission's purpose.

The Commission's decision to convert a legislative review petition to one for local action implicates its subject matter expertise and is ultimately within its delegated legislative authority to reach basic policy decisions.[46]  We will uphold a Commission decision as long as it is supported by a reasonable basis in the record.[47]

Before reaching the question of whether to convert a petition, the Commission must first determine whether annexation is appropriate.[48]  Neither a legislative review petition nor a local action petition can be approved unless the territory meets the annexation standards specified in 3 AAC 110.090–.135.[49]  Once these

---

[45]    *AVCG*, 527 P.3d at 283.

[46]    *See Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 99 (Alaska 1974).

[47]    *Id.*

[48]    *See* 3 AAC 110.140 (legislative review); 3 AAC 110.150 (local action).

[49]    The standards require:  a reasonable need for city government that cannot be met more efficiently and effectively by another city or borough providing essential municipal services, *see* 3 AAC 110.090; compatibility in character with the annexing city, *see* 3 AAC 110.100; necessary resources to provide essential municipal services on an efficient, cost-effective level, *see* 3 AAC 110.110; a sufficiently large and stable

standards have been met, the territory "may" be annexed by the legislative review process if the Commission also determines that any one of eight listed circumstances exists to justify annexation.[50] 3 AAC 110.610(a) is available to the Commission during the course of proceedings, allowing it to amend the petition and consider it as a local action petition if it determines that the balanced best interests of the locality and the State are enhanced by local participation. Regardless of the path chosen by the Commission, the petition may not move forward unless the annexation standards have been met.[51]

The Commission's Statement of Decision methodically outlines the basis for its findings. The Commission went through the relevant factors that it was required to consider under 3 AAC 110.090–.135. It determined that two of the eight circumstances in 3 AAC 110.140 applied: some of the areas proposed to be annexed were found to be "substantially surrounded" by Soldotna; and residents or property owners in the areas receive, or may be reasonably expected to receive, the benefit of Soldotna's city government without commensurate tax contributions.[52] And it addressed the best interests of the State before it approved the petition's conversion. The Commission found that although annexation would promote maximum local self-government and a minimum number of local government units — relevant factors to the best interests of the State analysis under 3 AAC 110.135 — the standard would be

---

population to support the extension of city government, *see* 3 AAC 110.120; the ability to provide all land and water necessary for the development of municipal services on an efficient, cost-effective level, *see* 3 AAC 110.130; and such promotion of maximum local self-government, minimum number of local government units, or relief to the state government from the responsibility of providing local services as to be in the best interests of the State, *see* 3 AAC 110.135.

[50]     3 AAC 110.140.

[51]     *See* 3 AAC 110.140; 3 AAC 110.150.

[52]     *See* 3 AAC 110.140(1), (4).

enhanced by converting the petition to one for local action. Because it made all these findings, it did not improperly task voters with deciding whether the petition meets annexation standards as Soldotna claims.

The Commission was particularly concerned about "whether the territory [was] truly in need of the services proposed by the city." That concern arose from divided opinion about the need for and quality of services that Soldotna could offer through annexation. Under 3 AAC 110.090(a), there must be "a reasonable need" for city government in order for a territory to be annexed. But under subsection (b) of that regulation, a territory may not be annexed "if essential municipal services can be provided more efficiently and more effectively by another existing city or by an organized borough."[53] Both were recurring themes in the public comment surrounding the petition. And while the Commission did determine there was a reasonable need for city government, it failed to make an express finding as to whether government services could be provided more efficiently or effectively by another city or borough. Although an omission of an express finding generally necessitates remand,[54] we agree with the superior court that the issue was necessarily resolved by the Commission in favor of Soldotna because the petition would not have been permitted to move forward if it found otherwise. The survival of the petition thus requires that result. Soldotna suffered no prejudice and any failure to make this express finding constitutes harmless error.

The State points to four facts that support the Commission's decision: (1) Soldotna has a history of annexing territory through local action; (2) the Kenai Peninsula Borough supported local action; (3) many people who provided public

---

[53] 3 AAC 110.090(b).

[54] *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1246 (Alaska 1995).

-18- **7722**

comment supported local action; and (4) the Commission analyzed the balanced best interests of the State and locality in their decisional meetings. Soldotna disagrees.

We recognize the distinction between annexation by unanimous consent, which Soldotna has used in the past, and by majority vote, which it has not. But even so, Soldotna's history does show that building support among local residents has been important to past municipal border changes and lends support for proceeding via local action. And it was reasonable for the Commission to acknowledge the preferences of residents who will be affected by annexation and the Kenai Peninsula Borough, which currently provides services to those areas. The Kenai Peninsula Borough assembly adopted a resolution opposing Soldotna's proposed annexation and encouraged the city council to seek voter approval on the issue as early as 2018. Given that the regulatory requirements for annexation were established but fierce debate among locals continued amidst borough opposition, there was a reasonable basis for the Commission to decide that a vote could "enhance" the balanced best interests of the locality and State.

As we explained above, the Alaska Constitution, AS 29.06.040, and AS 44.33.812 clearly authorize, and even require, the Commission to create pathways to annexation through local action. Annexation petitions require fact-specific inquiries that take into account "the unique circumstances presented by each petition."[55] There are certainly compelling arguments as to why the local option should be used sparingly, especially in light of the Commission's historical purpose to act as a check on local interests. But the Commission made findings that the territory met the standards required for annexation and acted within its discretion to proceed with the petition in the manner it determined to be in the best interests of the locality and the State. And although it made the decision to proceed by local action this time, there is nothing

---

[55] *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 98-99 (Alaska 1974).

preventing the Commission from deciding differently under different circumstances, as long as there is a reasonable basis for doing so.

The Commission's choice to require voter approval of the annexation decision falls within its own area of expertise. While a "best interests" standard is broad, determining what the "balanced best interests" might be is within the scope of the Commission's authority and expertise. Its role is to represent statewide interests in making decisions about municipal borders, recognizing that without it, processes that favor local popular opinion could hamper municipal development and the goals of the Alaska Constitution. But it is not necessarily the Commission's role to override or counter local opinion. Its role is to provide objectivity, which means balancing statewide interests with constituent feedback and democratic processes.

It is ultimately within the Commission's discretion to make policy decisions based on its own expertise, which the State characterizes fairly as "balanc[ing] the wide array of political, social, economic and geographic factors involved." While the Commission is meant to operate outside of the political process, it is not obligated to ignore these factors entirely. The same constitutional delegates that created an objective administrative body to make municipal boundary decisions also explicitly gave it power to contemplate when local action would be appropriate. Although the Commission has never before converted a municipality's petition for annexation by legislative review to one by local option, the Commission had a reasonable basis for choosing to use it for the first time here.[56]

## V.    CONCLUSION

We AFFIRM the superior court's decision affirming the Commission's decision.

---

[56] We recognize that the Commission itself was divided in its resolution of this challenging issue. But that does not suggest its decision was unreasonable.